Supreme Court has made clear that the language of an indictment must fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements of an offense charged. This Court, in Vasquez-Hernandez, made clear that an element of attempted illegal re-entry is the specific intent to be free from official restraint. Were the jury instructions proper on this point? The current model jury instructions? The ones that were given at his trial. No, Your Honor, they were not. So, Vasquez-Hernandez considered whether... No, no, in your case, with your client, his trial, were the jury instructions proper? Yes, Your Honor, the jury instructions complied with this Court's case law and set forth that specific element. So, a jury found that this element was satisfied in convicting him? That's correct, Your Honor. So, doesn't our recent decision, I know it happened mostly after the briefing, but there's United States v. Reed from just a few months ago from our court. Doesn't that case mean that because the jury instructions were proper and he was convicted under them, that this issue goes away? No, Your Honor, I believe that the controlling case law on that point is dubo. I believe that case law is still the controlling case law of this circuit, and this Court has examined multiple times. But Reed said that if you're convicted with jury instructions that have the element that you say was missing from the indictment, as long as everyone knew that that was the charge, you're fine, and I think that was the situation here.  As Your Honor mentioned, that case came out after the briefing in this case, and what I have done is examined the case law in light of the Cotton decision, which I believe the government's position is that that calls the rule of dubo into question. So, to further discuss Reed, I would need an opportunity to review that and brief that, and I'm certainly happy to do it. However, I do think dubo is clear on this point, and unless Reed overruled dubo, the controlling rule would be that a missing element from an indictment requires automatic reversal. You're reading the law a lot differently than I do. Where do you find, in a situation like this, as my colleague points out, in this situation, as I understand this, your client was fully aware of the element in the indictment. There was no question about what was required, right? I think that's right, Your Honor. There was no objection or anything like that. The jury instructions fully gave the opportunity to the jury to find what was necessary to prove that element of the crime, right? Yes, Your Honor. So, I was on the Reed panel, so I can tell you this, that that's enough. That's enough. In the other cases that you cite, the factual situations, in my judgment, are quite different. What's your best case of the ones that you've cited in your brief that you think is right on point, that you think is not at variance with the facts of this case? I think it would be a combination of cases, Your Honor. I don't think one case in particular, aside from Vasquez, that sets forth this element, and aside from this Court's case law in dubo that says all elements must be in the indictment, and certainly Supreme Court case law. But they are. As a matter of fact, didn't this quote the statute? Your Honor, I think what is most instructive, in my view, is taking a look at the case of Castillo-Mendez. That case does a good job of outlining this Court's case law historically as attempted illegal reentry elements have developed. In Pernillo, this Court did what I am asking the Court to do today. It reviewed an indictment. It consulted current case law that set forth elements of attempted illegal reentry, and it found that the indictment must include those elements. If the Court does that today, the case that it would refer to would be Vasquez. In Pernillo, the Court consulted a jury instruction case, and I think Vasquez-Hernandez is the most recent case that sets forth the elements of this offense. I take your point, but let's assume for a minute that we put that aside. Aren't there lots of cases that say that if the indictment parrots the statute and it's the element, that's enough? Yes, Your Honor. And isn't that what happened here? Well, the statute of attempted illegal reentry is silent on the point of mens rea. All the statute says is attempted illegal attempts to enter. The indictment here, I think as the government agrees, certainly is required to do more than that to establish the element. That's where the jury instruction comes in, isn't it? Well, I mean, certainly. That did clearly have the elements you're talking about included, right? It did. If an element, however, is necessary to convict, it is also necessary to indict. I don't think there is any dispute on that. What I'm not getting here is, if I understand correctly, the indictment tracked the statute. You indicate your client knew what was required to be proven. No surprises there. The jury had instructions that clearly specified the element as you want it specified. And the jury found that that element was satisfied. What more do you need? I think there is one problem that is presented by the language in this jury instruction that we haven't discussed yet. So if Your Honor would allow me. Please. I think the problem here is that the court's case law makes clear that to satisfy the element of mens rea, two things are required. The conscious desire to reenter without consent and the specific intent to be free from official restraint. On the face of this indictment, which alleges only that Mr. Davalos knowingly and intentionally had the conscious desire to enter without consent, someone charged with that language would not be guilty of attempted illegal reentry. But the jury instructions were proper, right? You already said that. Yes, Your Honor. By the time we got to trial, the matter was resolved. However, I think the issue that this really presents is that defendants have the right under the Fifth Amendment to have the grand jury pass on every element. And a grand jury did not pass on every element here. If another person, aside from Mr. Davalos, who was coming to the United States, for example, someone seeking asylum, they would have had the conscious desire to enter without consent, but they would not have had the specific intent to enter free from official restraint. And if they had been charged with this indictment, they would have, the indictment would have been returned and the grand jury would not have passed on an essential element. But now that we know that the actual trial jury thought he was guilty of this, does it matter? What's the harm? Well, Your Honor, I think unfortunately I'm the only one in the courtroom today who isn't familiar with Reed. So if that case says something different than what I'm. There's a guy out there that doesn't know about it. I am embarrassed to say it, Your Honor, and I'm sorry. It's all right. It's from February in Phoenix. So don't worry about it. Does Reed say that Dubot is no longer good law? It doesn't help you. It doesn't help you. I promise you. I believe you on that point, Your Honor, and it wouldn't be the first time that a case law wasn't helpful for my position. Does Reed say that Dubot is no longer controlling law? No, it just says that the jury instructions, once they're proper and he's convicted under them, it basically gets rid of the indictment problem. I mean, I certainly will enjoy the opportunity to read Reed. However, I think that Dubot is still controlling on the point of deficiency in an indictment. No case has overruled that. Again, with respect, I take your point. But I think when the indictment tracks the statute, Dubot doesn't say that it doesn't deal with that issue. And other cases make clear that that's enough, particularly when it's combined with proper jury instructions where the jury was required to find the mens rea element you're talking about. My understanding of Supreme Court case law is that tracking the statute is generally enough, but not always. If the language of the statute doesn't fully and expressly set forth all of the elements unambiguously, then there's a problem. Certainly with – Again, you're a fine lawyer. You're doing your job. I respect that. But I mean, your clients come into the United States illegally 11 times previously. This is not a new adventure for him. He knows perfectly well what's involved. And I think that gets to the other point of what you're going to be talking to us about. But do you want to save any of your time, Kathleen? Yes, Your Honor. I see that I'm running short. We could talk for a long time. Thank you very much, Your Honor. Good morning. May it please the Court. Good morning, Your Honor. May it please the Court. Zach Howe on behalf of the United States. The indictment here was sufficient. The Supreme Court and circuit courts have repeatedly held that indictments do not need to define legal terms of art. Here it is undisputed that entry is a legal term of art that includes freedom from official restraint as part of its definition. And therefore, the indictment did not need to define entry. Instead, it was sufficient under cases like Resendez-Ponce and Hamling that the indictment parroted the language of the statute. In fact, Resendez-Ponce is all but dispositive here. Well, since my colleague brought up Reid, I take it you don't want to talk about Reid? No, I think that goes to the harmlessness of the error. So if this court were to find that there was some error in the indictment, I think the error was harmless. And we know that because Duvalis's argument would have been the same. He focused on official restraint throughout the trial. His opening argument and closing argument were devoted to it. His questioning of witnesses and his theory of defense jury instruction all hit on that point. And then the jury was instructed on freedom from official restraint both by the court and in the theory of defense jury instruction that the court gave. So the defense was the same, and the outcome would have been the same because the jury rejected that defense. So I do think the error is harmless. Just to reemphasize this point, my understanding is this was the gravamen of their defense. They just repeatedly hammered what they now say the indictment didn't warn them about, right? That's entirely right, Your Honor. And the jury instructions addressed that, the court addressed that, and the jury said, we don't buy it, right? That's right, Your Honor, and there's no dispute here that the jury instructions were proper. And I do agree that was the focus of trial. In fact, one relevant quote from the opening argument at page six of the supplemental excerpts of record is, when Duvalis entered, there was, quote, no doubt in his mind that he was going to get caught. So it's clear that that was the focus of trial. Now, as to I think the best case that defense counsel listed on her side was Vasquez-Hernandez. I think the reason Vasquez-Hernandez isn't relevant here is because it was solely talking about what you need to instruct the jury on. And that, of course, is very different than what you need to include in an indictment. Indictment requires a plain, concise, and definite statement, whereas jury instructions need to instruct the jury on any element that wouldn't be understandable to a common person. That's what the case says at footnote three. That is not the requirement for indictments. So I think what's relevant here is that unbroken line of case law saying that you do not need to define a legal term of art in an indictment. If there are no other questions on that, just briefly on acceptance of responsibility. The court applied the appropriate standard. It said at least half a dozen times that it was not treating the fact that Duvalis went to trial as dispositive. In fact, at one point it even says, lest I be misunderstood by the Ninth Circuit, let me reiterate, I am not applying a categorical bar here. And then the court went on to consider every factor that Duvalis says the court should have considered. At pages 32 through 37 of the record, the court considers the pretrial statements that Duvalis made, the statements he made at sentencing, the element of contrition, the stipulations he entered into. But the court ultimately found that because he had gone to trial and contested an essential element of the crime on the merits repeatedly and fervently, that weighed against the acceptance adjustment. Is the district judge required to articulate every element he or she considers in determining whether to vary up or downward? No, Your Honor. Thank goodness. Under Gascarouille's, the en banc case from this court, the court doesn't have to articulate each and every factor. Here the court did acknowledge all the factors Duvalis said it was required to acknowledge. It simply found that there was no acceptance. For example, the district court was aware that he had previously come in 11 times, right? That's right. He had come in 11 times. He had been convicted nine times, and four of those were the very same offense that we're dealing with here. You should have been teaching illegal entry in law school. You know so much about it. I mean, it's amazing. Well, thank you, Your Honor. Not you, him. The defendant. I'll aspire to that. So if there are no other questions, then I'm happy to yield the remainder of my time. I don't think there are. Thank you, counsel. Thank you. We mean no disrespect to your position. You know that. Certainly, Your Honor. This is all part of the job. Indeed it is. I understand that the court is focused on harmlessness. I would just like to respond for the record to a couple of points that the government made on the issue of whether or not there was something omitted from the indictment. To be clear, Vasquez-Hernandez was a jury instruction case, but it was not so limited as to find that only in jury instructions is this issue relevant. It clearly held that an element is specific intent to be free from official restraint. As to the point of Resendez-Ponce, I don't think that case controls here. The court only considered the question of what is required for the actus reus element and not the intent. This specific question has never been presented or resolved by this court or the Supreme Court. So that case does not control. Regarding the acceptance of responsibility issue, my comments on that would be that Gasca-Ruiz first says that the court must state the relevant standard for the adjustment before applying a guideline. Here the court did not do that. The court did not state the correct standard that a defendant must clearly demonstrate acceptance of responsibility. The court instead said the standard here is that the defendant must establish his case is rare. That is not true. Rarity is language that comes from the commentary and the guideline. However, I think viewing the applicability of the adjustment through that lens makes the analysis improper. What this court did here is find that Mr. Davalos was not entitled to the adjustment because he had a jury trial and he did not roll over on every single element, essentially creating a rule that a defendant must either waive a jury or roll over or admit every element at trial to be eligible, which is inconsistent with this court's case law. Let's go over any other questions. Thank you both for your argument. We appreciate it. The case just argued is submitted.
judges: M. Smith, Friedland, Simon